# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| Richard W. Soga, Jr. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:11-CV-90 JVB |
| | ) | |
| Michael J. Astrue, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Richard W. Soga seeks judicial review of the final decision of Defendant Michael J. Astrue, Commissioner of Social Security, who denied his application for Supplemental Security Income disability benefits under the Social Security Act. For the following reasons, the Court remands the Commissioner's decision for further review.

**A. Procedural Background**

On August 2, 2007, Plaintiff applied for Supplemental Security Income disability benefits alleging disability beginning September 3, 1990. (R. 141). Plaintiff's claim was denied on October 1, 2007, and upon reconsideration on January 14, 2008. (R. 10). On February 1, 2008, Plaintiff filed a written request for a hearing before Administrative Law Judge Jose Anglada ("ALJ"). (*Id.*).

On January 14, 2010, the ALJ determined that Plaintiff was not disabled and was thus not entitled to SSI benefits. (R. 19). The ALJ found as follows:

1. The claimant has not engaged in substantial gainful activity since June 12, 2007, the application date.

2. The claimant has the following severe impairments: autistic disorder.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. The claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is moderately limited in his ability to understand, remember, and carry out detailed and complex job instructions; interact appropriately with the general public; and accept instructions and respond appropriately to criticism from supervisors.

5. The claimant has no past relevant work.

6. The claimant was born on October 9, 1984, and was 22 years old, which is defined as a younger individual age 18–44, on the date the application was filed.

7. The claimant has at least a high school education and is able to communicate in English.

8. Transferability of job skills is not an issue because the claimant does not have past relevant work.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, since June 12, 2007, the date the application was filed.

The ALJ's opinion became final when the Appeals Council denied Plaintiff's request for review on January 2, 2011. (R. 1).

**B. Factual Record**

**(1)** *Plaintiff's Background*

Plaintiff was born on October 9, 1984. (R. 141). Plaintiff completed high school in special education classes and is able to communicate in English. (R. 200). Plaintiff has no history of full-time work experience, but he has worked part-time as a dishwasher, cart collector, and inventory specialist. (R. 196).

Plaintiff currently lives at home with his parents. (R. 25). Plaintiff testified that he is able to prepare some of his own meals. (R. 35–36). Plaintiff also testified that he does chores around the house including snow shoveling, vacuuming, and cutting the grass. (R. 36–37). Plaintiff's mother and father showed him how to perform these chores. (R. 48). Plaintiff also drives himself to the mall and sends emails to his dad and sister. (R. 38, 41–42).

**(2)** *Medical Evidence*

In February and March 2003, Plaintiff met with Dr. Robert Coyle, a neuropsychologist, to undergo an evaluation. (R. 277). Dr. Coyle diagnosed Plaintiff with Disorder of Written Expression and Adjustment Disorder with mixed emotional features. (R. 286).

In August 2007, Plaintiff underwent a consultative physical examination with Dr. B. Saavedra. (R. 332). Dr. Saavedra found that Plaintiff has a history of ADHD, a history of depression, emotional disability, and obesity. (R. 331).

In September 2007, Dr. Victor Rini performed a consultative psychological examination of Plaintiff. (R. 362). Dr. Rini diagnosed Plaintiff with Asperger's Disorder and ADHD. (*Id.*).

In October 2007, Plaintiff met with state agency reviewing psychologist, Dr. William Shipley. (R. 366). Dr. Shipley completed the Psychiatric Review Technique and Mental Residual Functional Capacity Assessment forms. (R. 364). Dr. Shipley found that Plaintiff was capable of performing simple, repetitive tasks on a sustained basis without special accommodation. (R. 366). Dr. Shipley also found that Plaintiff may be limited from handling more complex, changing tasks and would not work well with the public. (*Id.*). In January 2008, Dr. Jospeh Pressner, another state agency reviewing physician, agreed with Dr. Shipley's findings. (R. 383).

In December 2008, Plaintiff underwent medical interrogatories from psychologist, Dr. Ellen Rozenfeld. (R. 384-389). Dr. Rozenfeld diagnosed Plaintiff with Asperger's Disorder, ADHD, and Adjustment Disorder with Mixed Emotional Features. (R. 389). Dr. Rozenfeld opined that these mental impairments did not medically equal a listed impairment. (R. 386).

In January 2009, Plaintiff met with psychiatrist, Dr. Candice Hunter. Dr. Hunter noted that Plaintiff had increased focus and energy levels since starting on the Focalin medication. (R. 436).

Beginning in April 2009, Plaintiff met with Dr. Darlene Barnes for psychological therapy. (R. 425–426). In December 2009, Dr. Barnes opined that Plaintiff was unable to satisfy competitive standards in several job-related tasks. (R. 533). Furthermore, Dr. Barnes concluded that Plaintiff had moderate restriction of activities of daily living; marked difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and three episodes of decompensation within twelve months. (R. 534).

**(3)** *Plaintiff's Testimony*

At the hearing, Plaintiff testified that he possessed a driver's license and that he graduated from high school. (R. 24, 25). Plaintiff also testified about his past part-time jobs as a dishwasher, cart collector, and inventory specialist. (R. 26). Plaintiff is not currently working, and he has never been employed full-time. (R. 25). Plaintiff testified that he had difficulty following simple instructions in his previous jobs. (R. 28–29). Plaintiff stopped working as an inventory specialist because they wanted him to start traveling to South Bend for work. (R. 30). Plaintiff refused to do this because he gets nervous and anxious if he is in the car for more than two hours. (R. 31).

Plaintiff testified that he takes Focalin[1], Geodon[2], and Zoloft.[3] (R. 33). He testified that these medications calm him down and help him fall asleep. (R. 33–34).

---

[1] Mayo Clinic, *Dexmethylphenidate,* Dexmethylphenidate (Focalin) increases attention and decreases restlessness in children and adults who are hyperactive, cannot concentrate for very long, or are easily distracted and impulsive, http://www.mayoclinic.com/health/drug-information/DR601539 (Last visited March 26, 2012).

[2] Mayo Clinic, *Ziprasidone,* Ziprasidone (Geodon) is used to treat symptoms of psychotic (mental) disorders, such as schizophrenia, mania, or bipolar disorder, http://www.mayoclinic.com/health/drug-information/DR601551 (Last visited March 26, 2012).

Plaintiff also explained that his mother taught him how to use the vacuum and his father taught him how to cut the grass and shovel the snow. (R. 46–48). Plaintiff drives himself to the mall, visits his sister, plays videogames, and sends emails. (R. 38–41). However, Plaintiff testified that he does not do laundry because he does not know how much laundry detergent to use. (R. 37).

Plaintiff's mother also testified at the hearing. She testified that her son was limited with regard to traveling long distances, working eight hour days, and following simple instructions around the house. (R. 64–65). Plaintiff's mother testified that Plaintiff has worked with Vocational Rehabilitation since high school and has never turned down a job or an interview for a job. (R. 66).

**(4)** *Vocational Expert's Testimony*

Vocational Expert ("VE"), Stephen P. Davis, testified at Plaintiff's hearing on January 14, 2010. (R. 70). The ALJ presented the VE with two hypothetical profiles. The first was a younger person with a high school special education degree and no past relevant work experience; a moderate inability to understand, remember, and carry out detailed instructions, interact appropriately with the general public, accept instructions, and respond appropriately to criticism from supervisors. (R. 71). In response to this hypothetical, the VE opined that the individual could perform the tasks of a cart collector, a dishwasher, and a stock checker. (R. 73). In Indiana, there are 4,100 cart collector jobs, 11,000 dishwasher jobs, and 1,680 stock checker jobs. (R. 73, 75).

---

[3] Mayo Clinic, *Sertraline,* Sertraline (Zoloft) is used to treat mental depression, obsessive-compulsive disorder, panic disorder, premenstrual dysphoric disorder, posttraumatic stress disorder, and social anxiety disorder, http://www.mayoclinic.com/health/drug-information/DR601237 (Last visited March 26, 2012).

The ALJ presented the VE a second hypothetical that included the restrictions identified by Dr. Barnes. (R. 76). Under this hypothetical, the individual could not meet competitive standards for remembering work-like procedures; the individual was seriously limited, but not precluded, for understanding and remembering very short, simple instruction; the individual was unable to meet competitive standards in working in coordination or proximity to others without being unduly distracted, making simple work-related decisions, or completing a normal workday without interruption; the individual was unable to meet competitive standards in asking simple questions or requesting assistance, accepting assistance and responding appropriately to criticism from supervisors; the individual was unable to respond appropriately to changes in work setting, to deal with normal work stress, or to be aware of normal workplace hazards. (R. 76–77). The VE opined that there are no jobs available for the individual described in this hypothetical. (R. 77). The VE testified that nothing from Plaintiff's past work history suggests that he would be able to work more than 16 hours per week. (*Id.*).

**(5)** *ALJ's Decision*

The ALJ concluded that Plaintiff was not disabled under the Social Security Act. (R. 19). The ALJ classified Plaintiff's autistic disorder as a severe impairment. (R. 12). However, Plaintiff's other impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 12–13).

The ALJ found that Plaintiff did not meet "paragraph B" criteria because Plaintiff only has: mild restrictions in daily living, moderate difficulties in social functioning, moderate difficulties in concentration, persistence or pace, and no episodes of

decompensation. (R. 13). To satisfy "paragraph B" criteria, Plaintiff's mental impairments must present two marked difficulties in these areas or repeated episodes of decompensation. 20 C.F.R. Part 404, Subpart P, App. 1, §§ 12.02, 12.02.

The ALJ found that Plaintiff's statements regarding his own personal care contradicted the alleged severity of his impairments. (R. 17). When determining Plaintiff's RFC, the ALJ relied on the Plaintiff's own testimony about being able to drive a car, cook for himself, and shop on his own. (*Id*.) The ALJ discounted the medical opinion from Dr. Barnes that Plaintiff was unable to meet competitive standards for employment. (R. 17–18). The ALJ found this opinion unreliable and found it to be inconsistent with the medical evidence of record and unsupported by Dr. Barnes' other findings. (R. 18). Lastly, the ALJ relied heavily on the patient notes from multiple physicians stating that Plaintiff was doing well, that he was attentive and cooperative, and that his medications were working. (*Id*.)

C. **Standard of Review**

This Court has the authority to review Social Security Act claim decisions under 42 U.S.C. § 405(g). The Court will uphold an ALJ's decision if it is reached under the correct legal standard and supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This Court will not reconsider facts, re-weigh the evidence, resolve conflicts in the evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Boiles v. Barnhart*,

395 F.3d 421, 425 (7th Cir. 2005). This Court will, however, ensure that the ALJ built an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may access the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002).

**D. Disability Standard**

To qualify for Disability Insurance Benefits the claimant must establish that he or she suffers from a disability. A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration established a five-step inquiry to evaluate whether a claimant qualifies for disability benefits. A successful claimant must show:

> (1) he is not presently employed; (2) his impairment is severe; (3) his impairment is listed or equal to a listing in 20 CFR. § 404, Subpart P, Appendix 1; (4) he is not able to perform his past relevant work; and (5) he is unable to perform any other work within the national and local economy.
> *Scheck v. Barnhart,* 357 F.3d 697, 699–700 (7th Cir. 2004).

An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter,* 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000).

**E. Analysis**

**(1) The ALJ's decision regarding Plaintiff's impairments was not harmful error**

Plaintiff claims that the ALJ erred because he did not classify Plaintiff's mental impairments as severe. (Pl. Br. at 7). Specifically, Plaintiff refers to: Asperger's Disorder, Adjustment Disorder with Mixed Emotional Features, Attention Deficit Hyperactive Disorder, Social Anxiety Disorder and Bipolar II Disorder. (*Id*.). The ALJ did, however, find Plaintiff's Autistic Disorder to be severe. (R. 12).

During step two of the disability evaluation process, the ALJ is required to determine whether claimant "had a severe impairment." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). Furthermore, the ALJ is required to consider the impairments in his RFC analysis, but there is no requirement that he label a particular impairment as severe. *Castile v. Astrue*, 617 F.3d 923, 926–927 (7th Cir. 2010). In the case at hand, the ALJ classified Plaintiff's Autistic disorder as severe. However, the ALJ refused to classify Plaintiff's other mental disorders as severe. In doing so, the ALJ relied on substantial medical evidence and Plaintiff's own testimony regarding the success he experienced while using his medication. There is no requirement that the ALJ classify the Plaintiff's other mental impairments as severe and, therefore, there was no error at this stage of the disability evaluation process.

**(2) ALJ Reasonably Determined that Plaintiff did not Meet or Equal a Listing**

Plaintiff claims that the ALJ's step three finding was "entirely conclusory" and "devoid of any analysis of the evidence of record." (Pl. Br. at 8). Furthermore, Plaintiff

claims that the ALJ's ignored Dr. Barnes' "paragraph B" findings and that the medical equivalence conclusion is not supported by substantial evidence. (Pl. Br. at 9).

To satisfy "paragraph B" criteria of Listing 12.02 (Organic Mental Disorders) and 12.10 (Autistic Disorder and Other Pervasive Developmental Disorders), Plaintiff must demonstrate that he suffers mental impairments that result in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of a extended duration. 20 C.F.R. Part 404, Subpart P, App. 1, §§ 12.02, 12.10.

The ALJ's "paragraph B" findings were supported by substantial medical evidence of record. First, the ALJ relied on the opinions of Dr. Rozenfeld, Dr. Shipley, and Dr. Pressner that Plaintiff did not satisfy at least two of the limitations required under "paragraph B." Furthermore, the ALJ specifically listed all of the daily activities that Plaintiff testified that he engaged in regularly. Lastly, the ALJ noted the testimony regarding Plaintiff's success while using his medication. All of these factors are discussed throughout the ALJ's opinion and provide substantial evidence to support the ALJ's ruling.

The ALJ also considered several medical opinions regarding whether Plaintiff satisfied an equivalency listing. Dr. Rozenfeld stated that Plaintiff did not equal or meet any listed impairment. Similarly, Dr. Shipley and Dr. Pressner completed Form SSA-831 on initial and reconsideration levels, and both doctors found no impairments or combination that met or equaled a listing. These forms, completed by a physician designated by the Commissioner, serve as evidence that the question of equivalency has

been considered. *See Schenk v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). Therefore, the ALJ may rely on these forms to determine a claimant's eligibility for benefits. (*Id.*). These three physicians provided opinions on the question of medical equivalence, and therefore the ALJ did not err by relying on them.

Lastly, the ALJ was not required to rely on the findings on Dr. Barnes. To determine whether a treating physician's opinion received controlling weight, the ALJ must consider whether the opinion was "well-supported" and "not inconsistent with the other substantial evidence." *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). Furthermore, the ALJ is required to provide "good reason" for discounting a treating physician's opinion. *Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2010). In the case at hand, the ALJ specifically addressed the reasons for discounting Dr. Barnes opinion. Namely, Dr. Barnes' opinion was inconsistent with the opinions of other physicians, the medical evidence of record, and the testimony given by Plaintiff about his limitations. Furthermore, the ALJ found Dr. Barnes' opinion to be in stark contrast to her evaluations of Plaintiff contained in her treatment notes. The ALJ sufficiently explained why he discounted Dr. Barnes' opinion, and therefore did not err in his step three analysis.

**III. ALJ Failed to Consider Whether Plaintiff Could Sustain Full-time Work**

Plaintiff claims that the ALJ failed to properly assess whether he was capable of sustaining full-time work. (Pl. Br. at 10). Plaintiff claims that the ALJ did not consider

that he had never worked a full-time job, that Plaintiff and his mother testified that he could not work a full-time job, and that Dr. Barnes opined that he could not complete a normal work week. (*Id.*). Plaintiff claims that this omission is error.

During an RFC finding, an ALJ must assess "an individual's ability to do sustained work-related physical or mental activities in a work setting on a regular and continuing basis." SSR 96-8p(1). The regulations go on to define "regular and continuing" to mean "8 hours a day, for 5 days a week, or an equivalent work schedule." *Id*.

In the present case, the ALJ based his RFC determination on the opinions of three doctors, none of which spoke specifically about sustaining full-time work. Dr. Rozenfeld, Dr. Shipley, and Dr. Pressner opined only that Plaintiff had the mental capacity to perform work on a sustained basis. Furthermore, Dr. Rozenfeld determined that Plaintiff could perform routine and simple operations. Dr. Shipley and Dr. Pressner determined that Plaintiff could perform simple, repetitive task without special consideration. However, none of them discussed Plaintiff's ability to sustain a 5-day, 40-hour work week, or an equivalent, as the regulation requires. Furthermore, Plaintiff has only worked part-time jobs in the past, and has had significant difficulty with all of them. It is unreasonable, therefore, for the ALJ to rely on these general opinions to justify finding that Plaintiff could, for the first time in his life, sustain full-time employment.

Since there has been no full-time employment in the past, and the opinions relied upon by the ALJ do not specifically discuss Plaintiff's ability to work full-time, the ALJ was in error. This is not harmless error, and therefore the case is remanded for further review.

**IV. The ALJ's credibility assessments were not "patently wrong"**

Plaintiff contends that the ALJ erred in his credibility assessment. Plaintiff claims that the ALJ's determination was a "post-hoc conclusion." (Pl. Br. at 13).

The ALJ's credibility determinations were not "patently wrong," and therefore Plaintiff's argument is without merit. *See Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). The ALJ is required to explain his credibility determinations in a way that is rational and logical, and supported by substantial evidence of record. *Id*. at 505. The ALJ made numerous findings, from Plaintiff's testimony and the medical evidence, about Plaintiff's ability to live an independent daily life. Also, the ALJ noted that Plaintiff and Plaintiff's mother conceded that his medications were working to control some of his symptoms. Furthermore, treatment notes from various physicians reported that Plaintiff's symptoms were benign. Therefore, it was rational and logical for the ALJ to find that Plaintiff's impairments are not as severe as alleged.

Since the ALJ relied on substantial evidence of record to make his credibility determinations, and they were not patently wrong, Plaintiff's argument is without merit.

**V. The ALJ's Step Five Finding was not in Error**

Plaintiff argues that the ALJ failed to ask the VE whether his testimony was consistent with the Dictionary of Occupational Titles ("DOT"). (Pl. Br. at 15). Plaintiff also argues that the VE's testimony was inconsistent with DOT. (Pl. Br. at 16).

14

An ALJ is required to question VEs whether their testimonies are in conflict with information in the DOT. SSR 00-4p; *Prochaska v. Astrue*, 454 F.3d 731, 735–736 (7th Cir. 2006). However, SSR-004p "requires the ALJ to obtain an explanation only when the conflict between the DOT and the VE's testimony is 'apparent'". *Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009).

The ALJ found that Plaintiff has an RFC that allowed him to perform "simple and routine" job tasks. (R. 18). According to the DOT, the ALJ's findings place Plaintiff in a Level 1 reasoning development category. When the ALJ questioned the VE, however, he asked about Plaintiff's past part-time jobs as a cart collector, dish washer, and inventory specialist. According to the DOT, these jobs require a Level 2 reasoning development. Level 2 jobs require an individual "to carry out detailed but uninvolved written or oral instructions."

To the extent there is a conflict, the Court must determine whether it is "apparent." *Terry*, 580 F.3d 471, 478. In *Terry*, the Court held that the conflict must be "obvious enough that the ALJ should have picked up on [it] without any assistance." *Id*. Furthermore, the Court refused to find an apparent conflict despite the fact that the ALJ limited Plaintiff to "simple" work, and the VE testified about jobs that require Level 3 reasoning development. *Id.*

In this case, the ALJ limited Plaintiff's work to simple, repetitive tasks. Looking to case law and the evidence of record, the Court finds that the Level 2 jobs posed to the VE are not in apparent conflict with the Level 1 categorization given to Plaintiff. Therefore, the ALJ's duty to ask the VE for further explanation was not triggered, and there was no error.

**VI. Conclusion**

The Court finds that the ALJ did not properly consider whether Plaintiff can sustain full-time employment. Therefore, this case is remanded for further proceedings consistent with this opinion.

SO ORDERED on March 29, 2012.

                                                    S/ Joseph S. Van Bokkelen
                                                    JOSEPH S. VAN BOKKELEN
                                                    UNITED STATES DISTRICT JUDGE